A89A1584. BROWN v. WINN-DIXIE ATLANTA, INC.
(389 SE2d 530)

BEASLEY, Judge.

Plaintiff Brown appeals the grant of judgment in favor of defendant Winn-Dixie Atlanta, Inc., notwithstanding the jury verdict in her favor, OCGA § 9-11-50 (b). Her suit is for the store's negligence in failing to protect her from the tortious misconduct of its employee (OCGA § 51-1-1), false imprisonment, (OCGA § 51-7-20), intentional infliction of emotional distress (see *Crowe v. J. C. Penney, Inc.*, 177 Ga. App. 586, 588 (1) (340 SE2d 192) (1986), slander (OCGA § 51-5-4), and bad faith and stubborn litigiousness (OCGA § 13-6-11), stemming from an incident while Brown was shopping.

The following is undisputed. At about 1:00 p.m. Brown's neighbor gave her a ride to Winn-Dixie. Brown went into the store and selected several food items including a container of Brunswick stew from the delicatessen. She was assisted at the deli by store employee Gates. Brown went through the express checkout lane and paid for these items at 1:15 p.m. or 1:16 p.m. Just after she had paid for the groceries, Brown realized that she had forgotten to buy some personal items. She knew the express lane cashier and asked her if she could leave her paid-for groceries at the counter while she went back to get the other items. Knowing the store well, Brown immediately located what she wanted, returned to the express lane, and purchased these items at 1:18 p.m.

Brown left the store with her purchases. She got into her neighbor's car and ate the Brunswick stew. As Brown and her neighbor were about to drive off, Brown spied an acquaintance and asked for a ride home. The woman agreed but had to shop first. So five to seven minutes after Brown had left the store, she reentered with the acquaintance. Before Brown went in, she tossed the empty stew container into a trash can. Brown began to shop and selected several food items including half a cooked chicken from the deli. Employee

Gates noticed that the stew Brown had selected earlier was not in the basket Brown was carrying. Gates had not seen Brown purchase the stew.

The store had been having problems with people getting food and taking it into the bathroom or leaving it on the shelves, i.e., not purchasing it, so employees were instructed to report to their supervisor when they saw a customer order something and then saw the customer again but without the ordered item. Gates suspected that Brown perhaps had not wanted the stew, had left it on the shelf or thrown it in the trash. She did not know what Brown had done with the stew, so she reported it to assistant manager Fields.

Fields suspected that Brown had not paid for the stew. He went to the checkout line where Brown was paying for the new purchases to verify that the stew was absent. After Brown got through checking out at 1:35 p.m., Fields asked her about the absent stew. The brief encounter between Brown and Fields is the basis of the litigation.

This court must view the evidence at trial in the light most favorable to Brown. See *Pendley v. Pendley*, 251 Ga. 30, 31 (1) (302 SE2d 554) (1983). Brown's version of the incident was that as she was about to leave the store, Fields came up to her and said, "Where is the Brunswick stew you had?" Brown said, "Excuse me?" Fields again asked where the stew was. Brown asked, "Why?" Fields said, "Because you didn't pay for it." Brown walked Fields down to the express checkout lane to verify that she had paid for the stew. She felt she had to prove herself at that point or she would not have been able to leave the store. The entire incident lasted two to three minutes. When cross-examined as to whether or not Fields had enough facts for him to have reasonably stepped up and asked where the Brunswick stew was, Brown at first said no but then added that the questioning but not its manner might have been reasonable.

A fellow customer's deposition testimony confirmed that Fields confronted Brown about the stew. The customer stated that Fields had accused Brown of shoplifting and that Brown was restrained because Fields was standing in front of Brown.

OCGA § 51-7-60 precludes recovery for detention or arrest for suspicion of shoplifting under certain circumstances. It provides that no recovery can be had by the plaintiff "where it is established by competent evidence: (1) That the plaintiff had so conducted himself or behaved in such manner as to cause a man of reasonable prudence to believe that the plaintiff, at or immediately prior to the time of the detention or arrest, was committing the offense of shoplifting, as defined by Code Section 16-8-14; or (2) That the manner of the detention or arrest and the length of time during which such plaintiff was detained was under all the circumstances reasonable." The two conditions for the absolute defense must both exist. *K Mart Corp. v.*

*Adamson*, 192 Ga. App. 884 (386 SE2d 680) (1989).

By the statute, "the General Assembly provided a reasonable course of conduct which a merchant may follow in affording protection to his displayed merchandise without incurring an unreasonable exposure to tort liability in doing so . . . the merchant and his agents are . . . protected against liability if their conduct springs from a reasonable belief that the party detained or arrested was engaged in shoplifting in his store. [Cits.]" *Swift v. S. S. Kresge Co.*, 159 Ga. App. 571, 573 (2) (284 SE2d 74) (1981).

The undisputed evidence showed that the store had a problem with deli items being served but not paid for. Brown had gone twice to the deli in the space of a few minutes, carrying other groceries. She had made three shopping forays in approximately twenty minutes. Neither deli clerk Gates nor Fields saw Brown check out the first two times. Neither saw Brown pay for the stew, even though Gates observed Brown, and Fields went to the checkout line to investigate for himself.

While questions of whether a defendant acted with reasonable prudence or whether the manner and length of the detention were reasonable are usually matters for the jury, they are not always so and may, under particular circumstances, be determinable as a matter of law. *Crowe*, supra at 588 (2). " 'What facts and circumstances *amount to* probable cause is a pure question of law.' " *K Mart Corp. v. Griffin*, 189 Ga. App. 225, 226 (375 SE2d 257) (1988).

Considering all the undisputed facts, Fields had cause as a reasonably prudent person to believe that Brown had not paid for the Brunswick stew. Brown herself testified that an inquiry under the circumstance might have been reasonable. As to the other factor required for the defense, the manner and length of the momentary encounter and simple questioning under the circumstances was reasonable as a matter of law and could not be found to constitute a tortious detention. See *Lord v. K-Mart Corp.*, 177 Ga. App. 651 (1) (340 SE2d 225) (1986) [physical precedent only]. Any failure by store personnel to adhere to internal security guidelines would not demonstrate "unreasonableness" in and of itself. *Luckie v. Piggly-Wiggly Southern*, 173 Ga. App. 177, 180 (2) (325 SE2d 844) (1984); more would be needed.

OCGA § 51-7-60 shielded the store from liability for the alleged tortious misconduct of its employee. See *Swift*, supra at 572-573 (1). The statute covered the alleged conduct constituting false imprisonment, see *Luckie*, supra at 179 (2), as well as that complained of as slander inasmuch as there was no evidence that the store expressly directed or authorized its agents to impugn or cast aspersions on Brown's integrity. See *Swift*, supra at 572 (2).

Brown could not recover for alleged intentional infliction of emo-

tional distress because Fields' actions were not so terrifying or insulting as naturally to humiliate, embarrass or frighten her. *Crowe*, supra at 588 (1). Instead, the evidence shows that Fields' "actions were undertaken in a good-faith effort to discharge [his] supervisory responsibilities rather than with the malicious intention of inflicting emotional distress on the plaintiff." *Arrowsmith v. Williams*, 174 Ga. App. 690, 692 (3) (331 SE2d 30) (1985).

Lastly, there was no evidence to support the allegation of defendant's bad faith and stubborn litigiousness.

Brown's failure to establish any of her asserted causes of action as a matter of law mandated that the jury verdict in her favor not be allowed to stand. The trial court properly granted the store's motion for judgment notwithstanding the verdict.

*Judgment affirmed. Deen, P. J., Banke, P. J., Birdsong, Sognier and Pope, JJ., concur. Carley, C. J., McMurray, P. J., and Benham, J., dissent.*

McMURRAY, Presiding Judge, dissenting.

The trial court and the majority have concluded that, as a matter of law, defendant Winn-Dixie, Inc., is sheltered from tort liability under the provisions of OCGA § 51-7-60. However, when the evidence is viewed in the light most favorable to plaintiff Brown, I cannot agree that her conduct presented any basis for a reasonable belief that she was engaged in shoplifting. Therefore, since OCGA § 51-7-60 (1) & (2) must be read in the conjunctive, defendant may not rely upon this statutory protection from liability. *K Mart Corp. v. Adamson*, 192 Ga. App. 884 (386 SE2d 680). It follows that in my view, the jury's verdict was authorized by the evidence at trial and the trial court's entry of judgment notwithstanding the verdict was error. Therefore, I respectfully dissent from the affirmance of the trial court's ruling overturning the verdict of the jury.

In order to properly consider the issues presented in the case sub judice, it may be helpful to recall that the criteria set forth in the first numbered paragraph of OCGA § 51-7-60 is "merely a restatement of the probable cause standard. . . ." *J. C. Penney Co. v. Miller*, 182 Ga. App. 64, 66 (3) (354 SE2d 682). See also *K Mart Corp. v. Griffin*, 189 Ga. App. 225, 226 (375 SE2d 257) and *Arnold v. Eckerd Drugs of Ga.*, 183 Ga. App. 211, 213 (358 SE2d 632). Thus, the primary issue in the case sub judice may be stated as whether there was probable cause to detain or arrest plaintiff for shoplifting. " 'Probable cause existed if at the time of the arrest [or detention] the [defendant's employees] had knowledge and reasonably trustworthy information about facts and circumstances sufficient to warrant a prudent man in believing that [plaintiff] had committed an offense.' *Borden v. State*, 247 Ga. 477 (277 SE2d 9) (1981)." *State v. Grant*, 257 Ga. 123, 125 (1)

(355 SE2d 646).

Of course, one who perpetrates a detention or arrest predicated on mere suspicion, which is less than probable cause, does not enjoy the protection of OCGA § 51-7-60. In my opinion this is just such a case. Although, I readily concede that the circumstances of the case sub judice were adequate to arouse the suspicions of defendant's employees, those employees were well aware that their observation of plaintiff had not been continuous, but intermittent or sporadic. A man of reasonable prudence would recognize a number of possible innocent explanations for the absence of the container of Brunswick stew, which could have arisen during the lapses when plaintiff was not being observed. Thus, the prudent person, while suspicious, would acknowledge the gaps in his or her knowledge and refrain from reaching a speculative conclusion that plaintiff was shoplifting.

Defendant's employees were not rendered impotent by the absence of probable cause, they were free to inquire of plaintiff concerning the absence of the Brunswick stew. *Lord v. K Mart Corp.*, 177 Ga. App. 651, 653 (340 SE2d 225). Instead, there is evidence from which the jury in the case sub judice could conclude that plaintiff was detained, albeit briefly. "One who has done nothing to give the impression that he or she is shoplifting should not be subject to any detention at all for that offense. . . ." *K Mart Corp. v. Adamson*, 192 Ga. App. 886, supra. As the evidence in the case sub judice authorized the jury to conclude that plaintiff was detained by defendant's employees without probable cause, the trial court's entry of judgment notwithstanding the verdict should be reversed.

I am authorized to state that Judge Benham joins in this dissent.

DECIDED NOVEMBER 30, 1989 —
REHEARING DENIED DECEMBER 20, 1989 —

*David J. Llewellyn*, for appellant.
*Fain, Major & Wiley, Roger W. Orlando, Gene A. Major*, for appellee.