A94A0316. MAYOR & ALDERMEN OF THE CITY OF
SAVANNAH v. WILSON et al.
A94A0317. RUPERT HELLER'S PRESCRIPTIONS, INC.
v. WILSON et al.
(447 SE2d 124)

Judge Harold R. Banke.

The appellees, Ricky Wilson, James Waller, and Mike Waller, commenced this action against the Mayor & Aldermen of the City of Savannah (the city) and Rupert Heller's Prescriptions, Inc. (Heller's), asserting claims arising from their arrests and prosecution for robberies committed at various locations of Heller's, a pharmacy chain. The trial court denied motions for summary judgment filed by the city and Heller's, and these interlocutory appeals followed.

In March 1991, James and Mike Waller went to a Heller's to have a prescription filled. A Heller's employee noticed James Waller and, believing him to be the man who had committed an earlier robbery, called the Savannah police. The police responded quickly and arrested James and Mike Waller without warrants, charging them with the October 1990 robbery of a Heller's. Mike Waller was released after two hours because the employee did not recognize him, but James Waller was detained for 66 hours.

Ricky Wilson was convicted of a November 1990 robbery of a Heller's located on Abercorn Street, after being positively identified by Heller's employees at trial. After Wilson had served eight months of his prison sentence, another person confessed to the crime, and

Wilson was released pursuant to his motion for new trial. Wilson produced evidence that the man who later confessed to the robbery of the Abercorn Street Heller's was suspected in a series of pharmacy robberies being jointly investigated by the Savannah Police Department and the FBI prior to the time Wilson was accused of the robbery.

In Case No. A94A0316, the city appeals the denial of its motion for summary judgment as to Waller's and Wilson's claims of constitutional violations under 42 USC § 1983. In Case No. A94A0317, Heller's appeals from the denial of its motion for summary judgment against Wilson's claim for malicious prosecution, and the Wallers' claims for false arrest and false imprisonment.

1. It is "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dept. of Social Svcs. of the City of N.Y.*, 436 U. S. 658, 694 (98 SC 2018, 56 LE2d 611) (1978). If a municipality's failure to train its employees demonstrates a "deliberate indifference" to the rights of its inhabitants, as where a deliberate choice is made to follow a course of action from among various alternatives, then it can be thought of as a "policy or custom" and municipal liability attaches. *City of Canton, Ohio v. Harris*, 489 U. S. 378 (109 SC 1197, 103 LE2d 412) (1989). See generally *Collins v. Harker Heights, Texas*, 503 U. S. ___ (112 SC 1061, 117 LE2d 261) (1992).

In the instant case, Waller's § 1983 claim asserted that the city had a policy of making warrantless arrests, and that the city's failure to promulgate a written policy to guide police officers in making warrantless arrests demonstrated a conscious indifference to the rights of citizens. The trial court found this claim sufficient to withstand the city's motion for summary judgment because of the uncontroverted evidence that Waller was not brought before a court for a probable cause hearing within 48 hours of his arrest as required under OCGA § 17-4-62, and that it was at least the de facto policy of the city not to comply with that statutory mandate on weekends. That evidence, and the inferences drawn from it, precluded summary adjudication of Waller's § 1983 claim.

2. In Wilson's § 1983 claim against the city, he alleged that the city deliberately withheld exculpatory information from the district attorney's office in spite of his *Brady* motion, which constituted a policy subjecting the city to liability. The trial court adopted the holding in *Walker v. City of New York*, 974 F2d 293 (2d Cir. 1992), i.e., that liability can be imposed under certain circumstances by a policy of failing to properly train employees about *Brady* material or issuing appropriate guidelines as to what constitutes *Brady* material; it con-

cluded that the city's guidelines for its employees to "follow the law" amounted to no guidance at all, and denied the city's motion for summary judgment. We agree that a jury issue exists under both state and federal law in this regard. See *City of Cave Spring v. Mason*, 252 Ga. 3, 4-5 (310 SE2d 892) (1984); *Poss v. City of North Augusta*, 205 Ga. App. 894, 895 (2) (424 SE2d 73) (1992).

3. In his malicious prosecution claim, Wilson contended that Heller's employee, Lawrence Garnto, intentionally and maliciously identified him falsely as one of the individuals who robbed the branch on Abercorn Street. The police located Wilson through the car tag number furnished by Garnto and produced a photo spread containing his picture which was shown to the four employees who witnessed that robbery. Garnto and one other employee identified Wilson as the robber; the other two were unable to select anyone. Based on this information, a warrant was executed for Wilson's arrest on behalf of Heller's, and he was tried and convicted.

To establish the necessary element of malice for this claim, Wilson offered his mother's affidavit stating that Wilson and Garnto knew each other, and that Garnto's brother's wife had "cussed out" Wilson because of a monetary dispute between Garnto's brother and Wilson. The trial court found that although the inference of malice urged by Wilson was "attenuated," it could not say as a matter of law that it was totally implausible.

"As movant, [Heller's] must unequivocally refute [Wilson's] allegations and conclusively negate one or more essential elements of plaintiff's case. [Cit.]" *Derry v. Clements*, 197 Ga. App. 173 (397 SE2d 594) (1990). All of Heller's employees who identified Wilson at trial, including Garnto, swore that they did not identify him for any personal vendetta, did not act with malice, and did not intentionally misrepresent his identification. This "was direct evidence which could constitute an uncontradicted fact capable of sustaining a motion for summary judgment. . . . The burden was then on [Wilson] not to rest upon the allegations of the pleadings, but to set forth specific facts showing there was a genuine issue for trial. [Cit.]" Id. at 173-174.

" ' "When the party upon whom the burden of an issue rests seeks to carry it, not by direct proof, but by inferences," ' . . . the evidence must not constitute a 'mere inconclusive inference' for then it is insufficient to withstand summary adjudication." (Citations omitted.) *Cohen v. Hartlage*, 179 Ga. App. 847, 850 (348 SE2d 331) (1986). Wilson's circumstantial evidence had no probative value when measured against the uncontroverted direct evidence of Heller's employees that they acted without malice. It follows that the trial court erred in denying Heller's motion for summary judgment on this claim.

4. The trial court concluded that a jury issue was presented by

the Wallers' claims for false arrest and false imprisonment, on the grounds that the police arrested and detained them solely because of the telephone call and identification made by Heller's employee, and it was undisputed that neither of them participated in the prior armed robbery she witnessed. We disagree.

"OCGA § 51-7-1 provides that '(a)n arrest under process of law without probable cause, when made maliciously, shall give a right of action to the party arrested.' An action for false arrest may lie when there has been an arrest under warrant, or when as in this case, the arrest was without a warrant. [Cit.]" *Gantt v. Patient Communications Systems*, 200 Ga. App. 35, 38 (2) (406 SE2d 796) (1991). Lack of probable cause and some evidence of the animus required by OCGA §§ 51-7-2 and 51-7-3 must be shown. *Pinkston v. City of Albany*, 196 Ga. App. 43 (2) (395 SE2d 587) (1990).

"Lack of probable cause is defined in OCGA § 51-7-43 as existing 'when the circumstances are such as to satisfy a reasonable man that the accuser had no ground for proceeding but his desire to injure the accused.' Unless the facts regarding probable cause are undisputed, it is a question for the jury. [Cits.]" *Gantt*, supra. However, "where there is no evidence of malice other than such inference as may be drawn from proof of the want of probable cause, and that proof shows some circumstances pointing to the guilt of the accused, although insufficient to exclude every other reasonable hypothesis, the essential ingredient of malice is not so established as to entitle the plaintiff in an action for [false arrest] to recover." (Citations and punctuation omitted.) *Barber v. H & H Muller Enterprises*, 197 Ga. App. 126, 130 (2) (397 SE2d 563) (1990).

In the instant case, Heller's made an affirmative showing that its employee acted in good faith in identifying James Waller, based upon her truthful belief that he was the perpetrator of a previous robbery she had witnessed. This good faith identification, though erroneous, coupled with the discovery of a handgun similar to the one used in the prior robbery in James Waller's truck, established the probable cause necessary for his arrest. Heller's further established that its employee told police officers that Mike Waller was not involved in the prior robbery, and he was released without being charged. Heller's having thus established the existence of probable cause for James Waller's arrest and the absence of any malice with regard to Mike Waller's arrest, the trial court should have granted summary judgment for Heller's on the Wallers' claim for false arrest.

Similarly, Heller's is not liable for false imprisonment in this case. " 'The law draws a fine line of demarcation between cases where a party directly or indirectly urges a law enforcement official to begin criminal proceedings and cases where a party merely relays facts to an official who then makes an independent decision to arrest or prose-

cute. In the former case there is potential liability for false imprisonment or malicious prosecution [cit.]; in the latter case there is not. [Cit.]' " *Tench v. Turner*, 201 Ga. App. 156, 157 (1) (410 SE2d 357) (1991).

The good faith identification of the Wallers as suspects did not render their detention by the police unlawful, as required by OCGA § 51-7-20. There is no issue for the jury where there is no unlawful detention. See *Fields v. Kroger Co.*, 202 Ga. App. 475 (414 SE2d 703) (1992).

*Judgment affirmed in Case No. A94A0316. Judgment reversed in Case No. A94A0317. Birdsong, P. J., and Blackburn, J., concur.*

DECIDED JULY 13, 1994 —
RECONSIDERATIONS DENIED JULY 28, 1994 — 

*Oliver, Maner & Gray, Patrick T. O'Connor, Wiseman, Blackburn & Futrell, James B. Blackburn*, for City of Savannah.

*Painter, Ratterree & Bart, R. Clay Ratterree, Sarah B. Akins*, for Rupert Heller's Prescriptions, Inc.

*Savage & Turner, Brent J. Savage, Kathryn W. Hughes, Donaldson, Herndon, Bell & Metts, Thomas R. Herndon*, for Wilson.